UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANDRES CORONADO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 3:22-cv-00741-GCS |
| | ) |
| PERCY MYERS, | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| ILLINOIS DEPARTMENT OF | ) |
| CORRECTIONS, | ) |
| LATOYA HUGHES, | ) |
| STEVEN BOWMAN, | ) |
| ALBERTO BUTALID, | ) |
| and LANA NALEWAJKA, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

This matter is before the Court on several motions to dismiss: (1) Defendant Myers's motion to dismiss amended complaint (Doc. 50); (2) Defendant Wexford Health Sources, Inc.'s motion to dismiss Count III (Doc. 66); and Defendant Steven Bowman's, Latoya Hughes's, and Lana Nalewajka's amended motion to dismiss (Doc. 72). Plaintiff Coronado, by and through Court appointed counsel, filed oppositions to the motions. (Doc. 53, 73, and 76). For the following reasons, the Court grants in part and denies in part the motion to dismiss amended complaint filed by Defendant Myers; grants the motion to dismiss Count III filed by Defendant Wexford Health Sources, Inc. ("Wexford"),

and grants in part and denies in part the amended motion to dismiss filed by Steven Bowman, Latoya Hughes, and Lana Nalewajka ("IDOC Defendants").

On April 15, 2022, Plaintiff Andres Coronado, an inmate of the Illinois Department of Corrections ("IDOC") currently detained at Centralia Correctional Center ("Centralia"), brought this civil rights actions pursuant to 42 U.S.C. § 1983 for alleged deliberate indifference to his medical needs and racial discrimination. (Doc. 1). In his original complaint, Plaintiff alleges that he went to the Health Care Unit ("HCU") at Centralia on July 13, 2021, to see Dr. Myers because he was experiencing ongoing numbness in his head, arms, and legs; he was also feeling dizzy, lightheaded, and weak. He reported his symptoms to Dr. Myers and requested medication. Dr. Myers refused him medication and told him that his symptoms would resolve over time. Plaintiff complained that Dr. Myers's response was the same for his previous visit on June 22, 2021. Plaintiff claims that Dr. Myers then told him, "I do not like you Mexicans, that is why I don't want to medically treat you." (Doc. 1, p. 6).

Plaintiff reported Dr. Myers's response to Lieutenant Boyle who then spoke to Dr. Myers. Boyle returned to Plaintiff and told him that Dr. Myers had admitted making racial comments to Plaintiff. Four days later, Plaintiff suffered a seizure and passed out. He was rushed to an outside hospital where he spent the next four days. He was diagnosed with macrocytic anemia, polyneuropathy, vitamin B deficiency, syncope and collapse, orthostatic hypotension, and lightheadedness. On his return to Centralia, Plaintiff was placed in the infirmary for 30 days. During that 30-day period, Dr. Myers saw him only three times. Plaintiff passed out a second time on August 27, 2021.

On June 8, 2022, the Court screened Plaintiff's complaint and allowed him to proceed on an Eighth Amendment deliberate indifference claim against Defendant Myers for failing to treat Plaintiff's serious medical needs (Count 1). (Doc. 9). Plaintiff was also allowed to proceed with an Equal Protection claim against Defendant Myers for refusing to treat Plaintiff because of his race (Count 2). *Id.*

On October 25, 2023, the Court held a hearing on Plaintiff's motion for recruitment of counsel. (Doc. 43). The Court granted the motion based on Plaintiff's limited education and knowledge of the English language. *Id.* Thus, the Court appointed attorney Lindsay Hagy for Plaintiff and granted counsel leave to file an amended complaint, *if necessary*. (Doc. 44, 45).

Plaintiff, by and through counsel, filed the Amended Complaint on December 15, 2023. (Doc. 49). The Amended Complaint contains three counts: Count I, an Eighth Amendment deliberate indifference claim against Defendants Wexford, Myers, Butalid, Hughes, and Bowman for failure to provide proper medical care or provide access to care; Count II, a Fourteenth Amendment Equal Protection claim against Defendants Myers, Wexford, Hughes, and Bowman for failure to treat Plaintiff because of his race; and Count III, *respondeat superior* claim based on state law against Wexford.[1]

---

[1] Plaintiff names the IDOC in the caption of the Amended Complaint. While he names the IDOC in the caption, he does not specifically name it in any of the three counts. He cannot succeed on such a claim because the IDOC (an agency of the State) is not a "person" subject to suit under § 1983. *See, e.g., Thomas v. Illinois*, 697 F.3d 612, 613-614 (7th Cir. 2012) (noting that the state and state agencies are not suable "persons" within the meaning of § 1983). Neither can a state agency be sued for prospective injunctive relief in federal court. *See, e.g., Quick v. Illinois Department of Financial and Professional Regulation*, 468 F. Supp. 3d 1001, 1009 (N.D. Ill. 2020) (collecting cases). Thus, the IDOC will be dismissed with prejudice from this case.

In the Amended Complaint, Plaintiff alleges that after contracting COVID-19 while detained at Centralia in the fall of 2020, he began to complain to Centralia's HCU about numbness in his feet, headaches, and dizziness. Despite noting Plaintiff's complaints about lightheadedness, dizziness, numbness, and weight loss between November 2020 and July 13, 2021, Dr. Myers prescribed medication, but he did not order further treatment, referral, or testing. On July 13, 2021, Plaintiff alleges that Dr. Myers refused to treat him because he was Mexican. The next day, Plaintiff filed a grievance about Dr. Myers's refusal to order treatment. On July 17, 2021, Plaintiff was rushed to St. Mary's Hospital after suffering a seizure and becoming unconscious. The hospital found that Plaintiff had severe macrocytic anemia and "severe peripheral polyneuropathy due to B12 deficiency," meaning that he would drag his toes when he walks.

Over the following months, Plaintiff claims that he was delayed in receiving B-12 injections because he continuously had to file grievances through the HCU to receive treatment for his B-12 deficiency and anemia. Currently, Plaintiff complains that he has not seen the doctor despite his frequent requests. He has also not been allowed to renew his "slow walk" permit, which previously had permitted him to walk at a slower place on account of his polyneuropathy and pain. In addition, Plaintiff reports continued numbness, headaches, dizziness, and difficulty sleeping.

## LEGAL STANDARDS

A motion to dismiss under Rule 12(b)(6) addresses the legal sufficiency of the plaintiff's claim for relief, not the merits of the case or whether the plaintiff will ultimately prevail. *See Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014); *Gibson*

*v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In reviewing a motion to dismiss, the court must construe the complaint in the light most favorable to the plaintiff, accept as true all well-pleaded facts, and draw all possible inferences in the plaintiff's favor. *See Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation omitted). The complaint will survive a motion to dismiss only if it alleges facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A court should deny leave to amend only if "it is certain that amendment would be futile or unwarranted." *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 519–520 (7th Cir. 2015). An amendment would be futile or unwarranted "when the proposed amendment is untimely," *see Sound of Music Co. v. Minnesota Mining & Mfg. Co.*, 477 F.3d 910, 923 (7th Cir. 2007), "the plaintiff has already had multiple chances to cure deficiencies," *see Lee v. Northeast Illinois Regional Commuter Railroad Corp.*, 912 F.3d 1049, 1053 (7th Cir. 2019), or an "amendment would cause substantial delay and prejudice," *see Airborne Beepers & Video, Inc. v. AT & T Mobility LLC*, 499 F.3d 663, 667 (7th Cir. 2007). Outside of these limited circumstances, district courts should not deny leave to amend.

## DISCUSSION

**I.     Defendant Myers's Motion to Dismiss**

First, the Court addresses Defendant Myers's motion to dismiss.[2] Myers moves the Court to dismiss the Amended Complaint on the grounds that it is untimely with respect to the new claims alleged, it is prejudicial, and it is futile. First, Defendant argues that the amended complaint should be dismissed because allowing the amended complaint would complicate the proceedings at this stage. Defendant Myers asserts that the facts underlying the new claims were known to Plaintiff at the time the original complaint was filed. Furthermore, Defendant Myers has already borne the burden and costs associated with motions, discovery, and the Plaintiff's deposition with the added live service of English-Spanish translation. Thus, Myers contends that proceeding with the Amended Complaint would force the litigation process to start over.

Plaintiff, on the other hand, opposes the motion arguing that he did not have access to all the information at the time of his original Complaint. Plaintiff also asserts that Defendant Myers will not be prejudiced if he is given leave to amend because very little discovery has occurred. Further, Plaintiff argues that the possible delay in proceedings does not unfairly prejudice Defendant Myers. Lastly, Plaintiff notes that the Amended Complaint relates back to the original Complaint under Rule 15(c) because it arises out of the same set of allegations made in the initial Complaint, and the statute of

---

[2]     For simplicity, the Court addresses only the arguments regarding futility, prejudice, and timeliness as to Defendant Myers's motion to dismiss. The Court will address Defendant Myers's remaining arguments when deciding the other two pending motions to dismiss as similar arguments are raised in those motions.

limitations has not yet begun to run on Plaintiff's claims due to the ongoing nature of his medical issues.

The Court finds that the amended complaint is not untimely as the Plaintiff has not had multiple opportunities to cure defects in the original complaint. The amendments would also not cause substantial delay and prejudice. Here, Plaintiff has only conducted limited discovery without the assistance of counsel. Furthermore, the Court, when it appointed counsel, granted Plaintiff leave to file an amended complaint, *if necessary*. Thus, the Court finds that Defendant Myers will not be prejudiced by the addition of these new allegations and Defendants. Based on the circumstances of this case, the Amended Complaint is warranted.

II.     **Wexford's Motion to Dismiss Count III**

Wexford argues that Court III must be dismissed as there is no *respondeat superior* liability for constitutional claims; furthermore, no state law malpractice or negligence claims were pled. Plaintiff concedes that he cannot proceed on a theory of *respondeat superior* liability against Wexford under 42 U.S.C. § 1983. However, Plaintiff argues that the allegations set forth in the complaint put Wexford on notice of medical malpractice claims against its employees, specifically Defendant Myers.[3] Based on the allegations and counts raised/pled in the amended complaint, the Court agrees with Wexford.

---

[3]     The cases cited by Plaintiff in support of allowing vicariously liability for state law claims against Wexford are distinguishable from the case at bar. Plaintiffs in those cases raised/pled separate state law claims for medical malpractice. Plaintiff did not separately raise/plead those types of state law claims in the instant case.

Plaintiff alleges that Defendant Meyers was acting within the scope of his employment under Wexford; this, however, does not form the basis for a claim against Wexford because there is no *respondeat superior* liability under § 1983. *See, e.g., Shields v. Illinois Dept. of Corrections*, 746 F.3d 782, 789-798 (7th Cir. 2014) (discussing the history of *respondeat superior* liability in the context of *Monell* claims and concluding that precedent does not currently support such a theory); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014) (noting that § 1983 does not permit liability based on the doctrine of *respondeat superior*). Count I is specifically pled as an Eighth Amendment deliberate indifference claim for failure to treat pursuant to 42 U.S.C. § 1983 against the individual defendants and an Eighth Amendment *Monell* claim against Wexford. Count II is specifically pled as a Fourteenth Amendment Equal Protection claim. Plaintiff's claim against Wexford in Count I is grounded on Wexford's policies and practices that resulted in its IDOC providers rendering inadequate and unconstitutional medical care to Plaintiff. Plaintiff's claim against Wexford in Count II is grounded on discriminatory treatment of Plaintiff. Even liberally construing these two counts, Plaintiff did not plead a state law medical malpractice claim or negligence claim which could provide the basis for *respondeat superior* liability. In fact, Plaintiff explicitly titled the counts as follows: "Count I Eighth Amendment – 42 U.S.C. § 1983" and "Count II Fourteenth Amendment – Equal Protection Clause." (Doc. 49, p. 11, 14). "Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Roe v. Elyea*, 631 F.3d 843, 857 (7th Cir. 2011) (quoting *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008). As such, Plaintiff has not presented a viable claim against Wexford for *respondeat superior*

liability. Thus, the Court **GRANTS** Wexford's motion to dismiss Count III and **DISMISES** with prejudice Count III of Plaintiff's Amended Complaint.

### III.   IDOC Defendants' Motion to Dismiss

Lastly, the Court addresses the IDOC Defendants' motion to dismiss. The IDOC Defendants, Bowman, Hughes, and Nalewajka, argue that liability under § 1983 arises only when a plaintiff can prove that a defendant was personally responsible for a deprivation of a constitutional right. Defendants reason that because there are no allegations or evidence suggesting that Defendants Nalewajka, Bowman, and Hughes had any personal involvement with Plaintiff other than their supervisory roles, § 1983 liability cannot attach to these Defendants. In response, Plaintiff refutes the IDOC Defendants' claim that Plaintiff only alleges claims based on supervisory roles within the organization. Rather, Plaintiff contends that the IDOC Defendants knew of Plaintiff's medical needs yet were deliberately indifferent to them in a personal manner. Moreover, Plaintiff asserts that claims for equitable relief based on ongoing violations of the law, such as Plaintiff's claim against Defendant Hughes in her official capacity at IDOC, should be allowed to proceed.

An Eighth Amendment claim based on deficient medical care requires plaintiff to allege "an objectively serious medical condition and an official's deliberate indifference to that condition." *Perez v. Fenoglio,* 792 F.3d 768, 776 (7th Cir. 2015). Deliberate indifference is established when "defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Elyea*, 631 F.3d at 857.

Plaintiff names Lana Nalewajka in the caption and in the list of parties. However, Plaintiff does not list her as a named defendant in any of the three counts. Merely naming a defendant in the caption or list of defendants is not sufficient to state a claim against that person. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998). Plaintiff must set forth sufficient allegations to show each person's individual involvement in a violation of his constitutional rights because an individual "cannot be held liable in a [S]ection 1983 action unless he [or she] caused or participated in an alleged constitutional deprivation." *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983). Here, Plaintiff alleged the following as to Defendant Nalewajka: "Plaintiff filed grievances based on both the lack of medical treatment and the discrimination by Dr. Myers. Defendant Lana Nalewajka reviewed Plaintiff's records and grievance as part of this process. The grievance related to the lack of medical treatment was partially upheld on September 21, 2021, well after Plaintiff had passed out and been hospitalized. The grievance based on the claims of Dr. Myer's race discrimination was denied on August 6, 2021. There is no indication that Ms. Nalewajka acted on Plaintiff's grievances in order to ensure that he received care." (Doc. 49, ¶ 50, p. 8).

The Court finds that this allegation is insufficient to impose liability on Defendant Nalewajka. "Prison grievance procedures are not mandated by the First Amendment and do not by their very existence create interests protected by the Due Process Clause, and so the alleged mishandling of [a prisoner's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953 (7th Cir. 2011). *See also Owens v. Evans*, 878 F.3d 559, 563 (7th Cir. 2017) (stating

that "[p]rison officials who simply processed or reviewed inmate grievances lack personal involvement in the conduct forming the basis of the grievance."). And "[r]uling against a prisoner on an administrative complaint does not cause or contribute to the violation." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). Thus, the Court finds that Plaintiff fails to state a claim against Defendant Nalewajka.

However, the Court agrees with Plaintiff that he sufficiently pled claims against Defendants Bowman, the Medical Director, and Hughes, the Director of the IDOC. Based on the allegations, Plaintiff claims these Defendants had knowledge of Plaintiff's anemia and B12 deficiency and "could 'have personally participated in, or ha[d] knowledge of,'" the kinds of available treatments for Plaintiff's medical condition. *Antonelli v. Sheahan*, 81 F.3d 1422, 1428 (7th Cir. 1996). Because Plaintiff alleged that these Defendants engaged in specific behavior resulting in a delay or absence of treatment for Plaintiff's medical condition, which in turn caused him nerve damage and bilateral footdrop, Plaintiff correctly asserts that his claim is not based on Defendants' supervisory roles within the IDOC, but rather on deliberately indifferent treatment at the hands of each Defendant. As such, the Court denies the amended motion to dismiss as to Defendants Bowman and Hughes.

## Conclusion

For the reasons provided, the motion to dismiss amended complaint filed by Defendant Percy Myers (Doc. 50) is **DENIED in part** and **GRANTED in part**; the motion to dismiss Count III filed by Defendant Wexford (Doc. 66) is **GRANTED**; and the amended motion to dismiss filed by IDOC Defendants (Doc. 72) is **DENIED in part** and

**GRANTED in part.** The Court **DISMISSES with prejudice** Count III against Wexford in the Amended Complaint. The Court also **DISMISSES with prejudice** the IDOC. The Court **DISMISSES without prejudice** Defendant Nalewajka.

    IT IS SO ORDERED.

    DATED: September 13, 2024.

Digitally signed by Judge Sison
Date: 2024.09.13 12:40:22 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**