## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **ANDRES CORONADO,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | |
| ) | **Case No. 3:22-cv-00741-GCS** |
| **PERCY MYERS,** ) | |
| **WEXFORD HEALTH SOURCES,** ) | |
| **INC.,** ) | |
| **LATOYA HUGHES,** ) | |
| **STEVEN BOWMAN,** ) | |
| **and** ) | |
| **ALBERTO BUTALID,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM & ORDER</u>

**SISON, Magistrate Judge:**

Pending before the Court are Defendant Steven Bowman's and Defendant Latoya Hughes's motion for summary judgment on the issue of exhaustion. (Doc. 89, 107). Defendants Alberto Butalid and Wexford Health Sources, Inc. ("Wexford") also filed a motion for summary judgment on the exhaustion of administrative remedies (Doc. 90, 91).[1] Defendants argue that Plaintiff did not exhaust his administrative remedies because he did not file any grievances about Defendants relevant to Plaintiff's claims. Plaintiff opposes the motions for summary judgment. (Doc. 96, 99). The Court has determined that a hearing on the motions is not necessary. For the reasons delineated below, the Court grants Defendant Bowman's and Defendant Hughes's motion for summary

---

[1] Defendant Myers filed a motion to withdraw the affirmative defense of failure to exhaust, and the Court granted the motion. (Doc. 25, 26).

judgment. It likewise grants Defendant Butalid's and Wexford's motion for summary judgment.

## PROCEDURAL BACKGROUND

Plaintiff Andres Coronado ("Coronado") is an inmate in the Illinois Department of Corrections ("IDOC"), currently incarcerated at Centralia Correctional Centralia Correctional Center ("Centralia"). On April 15, 2022, Plaintiff filed this civil action pursuant to 42 U.S.C. § 1983 for violations of his constitutional rights that occurred while at Centralia. (Doc. 1). Plaintiff's original complaint related to the denial of medical care for anemia and B12 deficiency which left him with permanent medical issues, including nerve damage and the dragging of his feet.[2]

On June 8, 2022, Court completed its preliminary review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A and allowed Plaintiff to proceed against Defendant Myers

---

[2]     In his original complaint Plaintiff alleged that he went to the Health Care Unit at Centralia on July 13, 2021, to see Dr. Myers because he was experiencing ongoing numbness in his head, arms, and legs; he was also feeling dizzy, lightheaded, and weak. He reported his symptoms to Dr. Myers and requested medication. Dr. Myers refused him medication and told him that his symptoms would resolve over time. Plaintiff complained that Dr. Myers's response was the same at his previous visit on June 22, 2021. Plaintiff claims that Dr. Myers then told him, "I do not like you Mexicans, that is why I don't want to medically treat you." (Doc. 1, p. 6). Plaintiff reported Dr. Myers's response to Lieutenant Boyle who then spoke to Dr. Myers. Boyle returned to Plaintiff and told him that Dr. Myers had admitted making racial comments to Plaintiff. Four days later, Plaintiff suffered a seizure and passed out. He was rushed to an outside hospital where he spent the next four days. He was diagnosed with macrocytic anemia, polyneuropathy, vitamin B deficiency, syncope and collapse, orthostatic hypotension, and lightheadedness. On his return to Centralia, Plaintiff was placed in the infirmary for 30 days. During that 30-day period, Dr. Myers saw him only three times. Plaintiff passed out a second time on August 27, 2021. Plaintiff sued Dr. Myers in his individual capacity for failure to provide Plaintiff with adequate medical care. According to Plaintiff, Dr. Myers acted with deliberate indifference to Plaintiff's serious medical needs by failing to treat him, which caused his hospitalization, as well as the 30-day stay in the infirmary. Plaintiff also brought a claim against Dr. Myers for refusing to treat Plaintiff because of his race. (Doc. 1).

on the following: an Eighth Amendment deliberate indifference claim for failing to treat Plaintiff and an Equal Protection claim for refusing to treat Plaintiff because of his race. (Doc. 9). Thereafter, the Court appointed counsel for Plaintiff and allowed Plaintiff to file an amended complaint. (Doc. 44). Plaintiff, through appointed counsel, filed the amended complaint on December 15, 2023. (Doc. 49). In the Amended Complaint, Plaintiff alleges that after contracting COVID-19 while detained at Centralia in the Fall of 2020, he complained to Centralia's Health Care Unit ("HCU") about numbness in his feet, headaches, and dizziness. Despite noting Plaintiff's complaints about lightheadedness, dizziness, numbness, and weight loss between November 2020 and July 13, 2021, Dr. Myers prescribed medication, but he did not order further treatment, referral, or testing.

On July 13, 2021, Plaintiff alleges that Dr. Myers refused to treat him because he was Mexican. The next day, Plaintiff filed a grievance about Dr. Myers's treatment refusal. On July 17, 2021, Plaintiff was rushed to St. Mary's Hospital after suffering a seizure and becoming unconscious. The hospital found that Plaintiff had severe macrocytic anemia and "severe peripheral polyneuropathy due to B12 deficiency," meaning that he would drag his toes when he walks. Over the following months, Plaintiff claims that he was delayed in receiving B-12 injections. He continuously filed grievances through the HCU to receive treatment for his B-12 deficiency and anemia. Plaintiff claims that he has not seen the doctor despite his frequent requests. His "slow walk" permit was also not renewed, which previously had permitted him to walk at a slower place on account of his polyneuropathy and pain. In addition, Plaintiff reports continued numbness, headaches, dizziness, and difficulty sleeping.

Defendants moved to dismiss Plaintiff's amended complaint, and the Court granted in part and denied in part the motions. (Doc. 77). Specifically, the Court allowed Plaintiff to pursue an Eighth Amendment deliberate indifference claim, Count 1, for failure to treat against Defendants Myers, Butalid, Hughes, and Bowman and against Wexford for a widespread practice within the IDOC for inadequate healthcare. The Court also allowed Plaintiff to pursue a Fourteenth Amendment Equal Protection claim, Count 2, against Defendants Myers, Wexford, Hughes, and Bowman for discriminatory treatment.

### FACTUAL BACKGROUND

At the time of the alleged events, Plaintiff was housed in Centralia. Plaintiff alleges that he began complaining to Defendants about his medical issues in April 2021.

Defendant Steven Bowman declared that he is not a member of the Administrative Review Board ("ARB"), that he is the IDOC medical director, and that he is not the facility medical director of Centralia. (Doc. 89-6). Defendant Latoya Hughes declared that she has been the Acting Director of the IDOC since April 1, 2023. (Doc. 89-7). Before that date, she was the Chief of Staff for IDOC from August 2022 to April 2023. *Id.* Prior to that, she was the Chief Inspector at IDOC. *Id.*

The record reveals the following relevant grievances to Plaintiff's claims:

*Grievance # E-21-7-82*

In emergency grievance # E-21-7-82, dated July 14, 2021, Plaintiff complained about medical staff and staff conduct. Plaintiff grieved the following:

On 7-13-21 between 5-6 PM, I was called to Healthcare Unit to see the Doctor

about numbness in my Head, Arms and Legs that is ongoing problem!! Once He called Me into the examination room and asked Me what the problem was I told Him all of these things as well as asked for pain medication that I also feel from this problem. He told Me "no" and stated that my condition will all go away on its own. I then said this situation is just like the first time on 6-22-21, You still will not listen to Me!! He then said "I do not like Mexicans, that is why I don't want to medically treat you." Then, I immediately left out of the examination room on 7-13-21 and told the Sgt. at the Healthcare Desk what this Doctor had just said to Me. I then came back to My assigned cell house (N4-B-16), and asked the Control room Officer to call the Lt. for this cluster so I can talk to Him about what was said to Me by the Doctor at the Healthcare Unit. After explaining to Lt. Boyle of everything that happened, He went to the Healthcare Unit to see if it was true or not? The Doctor openly admitted that He made this racist comment to Lt. Boyle, who then came back to Me at the cellhouse (N4-B-16) and told Me to write this very grievance! There will be a "lawsuit" forthcoming against this same Doctor, and any Staff who negatively get involved for the ill treatment I overall received from this Doctor, as well as My Family has been notified of what was said and done to Me and will be calling the Director Rob Jeffreys to complain about these issues, as well as ask that He be fired promptly!!!  END OF GRIEVANCE.

(Doc. 89-5, p. 4-5).  Plaintiff requested that the doctor be fired for his racist comments and to be seen by another doctor. *Id*.

On July 28, 2021, the Chief Administrative Office ("CAO") expedited the grievance as an emergency. (Doc. 89-5, p. 4.). The grievance officer forwarded the grievance to the Health Care Administrator and Lt. Boyle. The written response from the Health Care Administrator indicates that the grievance was reviewed, the medical record was reviewed, and that the grievance was forwarded to Wexford to investigate. Further, the Health Care Administrator stated that once Wexford responds, the information will be sent to Internal Affairs. The written response from Lt. Boyle reveals that he did not speak to the doctor, that he did tell Plaintiff to write a grievance, and that the medical staff that was present in the healthcare unit at the same time as Plaintiff did not hear any racist

comments by the doctor. On August 6, 2021, Internal Affairs reported that it could not substantiate Plaintiff's claims. *Id*. at p. 2. Accordingly, on August 6, 2021, the grievance officer denied Plaintiff's grievance. That same day, the CAO agreed with the grievance officer. *Id*. On August 17, 2021, ARB member DeAnna Kink denied the grievance finding it was properly addressed by the facility and that treatment was at the discretion of the IDOC physician; Director Jeffreys concurred. *Id*. at p. 1.

*Grievance # E-21-9-7*

About six weeks later, Plaintiff filed another emergency grievance dated August 31, 2021, complaining about medical treatment. Specifically, the grievance read:

> On July 13, 2021, (I seen Dr. (Meyers or Mierers) and he totally ignored ALL of my complaints and requests for medical treatment. This doctor totally ignored my requests for dizzy, lightheaded, and weakness treatment on 7/13/21. On 7/17/2021 I had a seizure and passed out in N4 housing unit; and was taken to outside emergency Room at St. Mary's Hospital in Centralia. I was then admitted to St. Mary's Hospital from 7/17/21 to 7/21/21. Upon release from St. Mary's I was then placed in HCU infirmary here at this facility. I seen Dr. Meyers or Mieres 3 times over the past 30 days in HCU at Centralia CC. The treatment I received for my diagnosis at St. Mary's Hospital was for the Macrocytic Anemia, Polyneuropathy, Vitamin B Deficiency, Syncope and collaspe [sic] Orthostatic Hypotensions and lightheadedness. These are all the problems I reported of my healthcare needs to (Dr. Meyers or Mierers). This Doctor continues to ignore my pleas for adequate and professional healthcare treatment. I passed out again from dizzy spell on 8/27/21; and I continue to be weak lighthead and fell off balanced. My legs are heavy numb, and weak and I can barely walk. I have not seen any Dr. here at this facility even since the nurse came and got me in wheelchair on 8/27/21 on 1st shift. This doctor continues to abuse his oath and mistreat me due to the previous grievance from here on him E-21-7-82.

(Doc. 89-1, p. 18-20). Plaintiff requested to be taken to an outside specialist to see another doctor and to receive humane and professional healthcare. *Id*. at p. 18.

On September 3, 2021, the CAO deemed the grievance emergent. The

grievance officer received the grievance on September 8, 2021, and forwarded it to the healthcare unit for review. On September 21, 2021, the grievance officer recommended that the grievance be partially upheld. The officer noted that Plaintiff had been diagnosed with anemia, that he was getting his medications as prescribed, and that he was placed in a housing unit closer to the healthcare unit. The CAO concurred with the grievance officer's recommendation on September 24, 2021. (Doc. 89-1, p. 16).

Plaintiff appealed the grievance on October 15, 2021, and the ARB received the grievance on October 22, 2021. (Doc. 89-1, p. 16). On November 19, 2021, the ARB denied the grievance as it was appropriately addressed by the facility and because treatment was at the discretion of the IDOC physician; Director Jeffreys concurred. *Id*.

### Grievance # 21-12-76

Plaintiff filed another emergency grievance on December 10, 2021, complaining about medical treatment. The grievances stated: "[o]n December 9, 2021[,] I was denied my B-12 injection. Offices Hodges and Harris 'The S1 Officers refused to call HCU for me. I told Lt. Grade about this and he took my info. I feel weak. I told . . . Harris about this today on 12-10-21. I still haven't had my shot." (Doc. 89-1, p. 14). Plaintiff requested his B-12 shot "immediately." *Id*.

On December 16, 2021, the CAO found the grievance emergent. The grievance officer received the grievance on December 20, 2021, and forwarded the grievance to the healthcare unit for review. The healthcare unit responded that injections had been given.

(Doc. 89-1, p. 13). On January 7, 2022, the grievance officer recommended that the grievance be partially upheld and noted that Plaintiff received his injections. The CAO agreed the same day. Plaintiff appealed this grievance to the ARB on January 20, 2022, and the ARB received it on January 24, 2022. *Id*. On January 26, 2022, the ARB denied the grievance finding it was properly addressed by the facility. It also noted that Plaintiff had received the injection, and treatment was at discretion of the licensed medical provider. That same day, Director Jeffreys concurred. *Id*. at p. 12.

*Grievance # 22-2-147*

On February 22, 2022, Plaintiff filed an emergency grievance complaining about medical treatment. Explicitly, the grievance read:

> I Been Sending Request Slips To Health Care To See The Doctor, I'm Requesting To See The Doctor To Ask To Renew The Bottom, Low Bunk Because is Expire, Because My Medical Condiction [sic] Require To Be On The Low Bunk, My Medical Problems is syncop [sic]-And Collapse, Orthostatic Hypotension, Lightheadedness, Macrocytic Anemia, Polyneuropathy, And Vitamin B-12 Deficiency, Because All This, I'm still feel Dizzy And weak And No Stainght [sic], And I'm Scare To Have Another Syncope And collapse From The Top Bunk, So I Am Requesting Another Permite [sic] For Low Bunk For A List Another 6 Months Or For Life Because This Medical Issues On Me Are For Life, If I Fall From The Top Bunk Is Going To Be Your Responsible Because Medical Staff Don't Want To Put Me To See The Doctor. And the Doctor is Denied Me The Low Bunk And Doctor Stop The Give Me the Vitamin B-12 And When They Stop Given Me The B-12 I Feel Worse, And I Don't Want To Be Taken To E.R. Again. St. Mary's Hospital Diagnosis, Syncope And Collapse, Orthostatic Hypotension, Lightheadedness, Polyneuropathy, Macrocytic Anemia, Vitamin B-12 Deficiency.

(Doc. 89-5, p. 18-19). Plaintiff requested a low bunk permit for more than six months. *Id*. at p. 18. The same day, the CAO deemed the grievance emergent. *Id*. The grievance officer received the grievance and forwarded it to the healthcare unit on the same day as well.

On March 11, 2022, the grievance officer recommended that the grievance be partially

upheld as Plaintiff was seen by the provider on March 1, 2022, and the low bunk permit

was renewed. The CAO concurred with the grievance officer on March 14, 2022. *Id*. at p.

16.

*Grievance # 22-3-153*

On March 20, 2022, Plaintiff submitted an emergency grievance complaining about

lack of medical treatment regarding his B-12 deficiency and lack of injections. (Doc. 89-1,

p. 10). The grievance stated:

> On February 17, 2022 Health Care Call Me To Do a Blood Taste [sic] To Check
> My Level from B-12-Vitamin. On 3/1/22, Health Care Call Me To See The
> Doctor Smith. He Read Me The Lab Reports From 2/17/22. He Told Me That
> I'm Still Low On The B-12 Vitamin, That I still Need More Injections. Doctor
> Smith Prescribe Me 90 Days More Of B-12 Injections One Every 2 weeks. The
> Last One I Had Was on 2/3/22 And Medical Staff From Health Care Still Don't
> Know Nothing About it. I Been Sending 4 Request Slip To Health Care About
> The injections And I Been Asking All The Nurses And They Don't Know
> Nothing About it About The B-12-injections, I Been Filling [sic] Real weak,
> Dizzy, And Sleepy Because I Still Need the B-12 Vitamin Like the Doctor Smith
> Told Me. The Nurses And the Director of Nursing Don't Care And They Keep
> Doing The Same Thing Every Time The Doctor Prescribe Me The B-12, The
> Nurces [sic] Every Time I Ask Them They Been Lying [sic] To Me and Renata
> Lowery Don't Want To Order the B-12 injections Because she Don't Care if I
> Pass out Again And Send Me To The E.R. Hospital – Mary's were [sic] They
> Diagnose [sic] with Macrocytic Anemia Because The Food, And That's why I
> Got Very Low Level of B-12 vitamin, Deficiency, Why Medical staff From
> Health Care Don't Respond to My All Request That I Been Sending to Health
> Care? Nurces [sic] They Been Playing And Denied me the B-12.

(Doc. 89-1, p. 10-11). Plaintiff requested to see the doctor as soon as possible to ask why

the nurses were not doing their jobs and to receive his B-12 injections. *Id*.

On March 21, 2022, the CAO deemed the grievance emergent. (Doc. 89-1, p. 10-11).

The grievance officer received the grievance the next day and forwarded the grievance to

the healthcare unit for review. (Doc. 89-1, p. 9). The healthcare unit submitted a written response indicating that PA Smith ordered the injections for three months. The response also indicated that Plaintiff received injections on March 29, 2022, April 29, 2022, and the last injection would be scheduled for May 29, 2022. The healthcare unit further noted that refills were to be determined by the Medical Director. *Id.*

On May 31, 2022, the grievance officer recommended that the grievance be partially upheld. The grievance officer reasoned that Plaintiff was ordered injections for three months and Plaintiff received two of those injections, with the last injection being scheduled for May 29, 2022. Refills were also to be determined by the Medical Director. On June 1, 2022, the CAO concurred with the grievance officer.  On June 15, 2022, Plaintiff appealed the grievance to the ARB, and the ARB received the grievance on June 17, 2022. (Doc. 89-1, p. 9). On June 22, 2022, the ARB denied the grievance finding it was properly addressed by the facility, noting that Plaintiff had been receiving injections, with one scheduled, and that treatment was at the discretion of the licensed medical provider. That same day, Director Jeffreys concurred. *Id.* at p. 8.

*Grievance E-22-10-110*

On October 18, 2022, Plaintiff submitted an emergency grievance complaining about lack of medical treatment regarding a blood test due to a B-12 deficiency. (Doc. 89-1, p. 6). Specifically, the grievance read:

> On Or About 9-2-2022 I Was Called To Nurse Sick Call As A Result of My Reporting Weakness In My Legs, And Sought Treatment For An On Going Medical Situation, Which Originally Occurred in 2021. Due To My Symptoms Being Identical To My Episode Of 2021 I Relayed To The Nurse That My Previous Diagnosisis [sic] Was A B-12 Defiency [sic], The Defiency [sic] Was

Found Only After I Had Passed Out and Taken to St. Mary's Hospital In Centralia, Other Symptoms Included, Thining [sic] of the Blood, Dizziness And Blood In My Urine, Weakness In My Legs And a Lack Of Balance. Because Of My Diagonasis [sic] of Anemia Defiency [sic] I Have Been Given B-12 Shots Which I Must Take for the Rest Of My Life. My Lab Reports Show That My Levels On 11-16-21 Were 169, And On 2-18-22 My Levels Were 326, However After My Last B-12 Injection On 2-3-22, And Not Having Any Injections Since Then My Levels On 6-14-22 Were Reported As 236. After Expressing These Concerns To The Nurse She Requested From the Doctor An Order For A Blood Test Which He Approved. I Have Been Back To the Hospital Twice Due To Weakness In My Legs And A Lack Of Balance It Has Been Three (3) Weeks Since the Order Was Given And I Am Yet To Receive A Blood Test, The Last Time I Spoke With The Nurse She Relayed To Me That No One Was Available To Perform The Test And That I Should File A Greivance Concerning The Matter. Due To My Symptoms Being Identical To Those With My Previous Episode of Defiency [sic] In Which I Almost Expired, I Am Very Concerned, And Urgently Need To Have This Blood Test Taken Immediately As I AM Growing Weaker As The Days Pass. Attached To This Grievance You Will Find My Diagonisis [sic] From My Previous Doctor Outling [sic] My Treatment As Well As His Concerns.

(Doc. 89-1, p. 6-7). Plaintiff requested to be given the ordered blood test and treatment for his B-12 Deficiency. *Id.*

On October 20, 2022, the CAO reviewed the grievance and expedited it as an emergency. (Doc. 89-1, p. 6). On October 21, 2022, the grievance officer reviewed the grievance and forwarded it to the healthcare unit for review. *Id.* at p. 4. On February 15, 2023, the grievance officer called Plaintiff to discuss the grievance. Plaintiff stated that he was receiving the B-12 injections, that his prescription needed to be renewed due to the delay before receiving the injections, and that he wanted the prescription for life. Plaintiff's medical chart notes that his last prescription was written on January 5, 2023, for 90 days and would need to be renewed around April 5, 2023. *Id.* On February 22, 2023, the grievance officer recommended that the grievance be partially upheld as Plaintiff was

receiving the injections through April 5, 2023; medical treatment/prescriptions were also at the discretion of the facility Medical Provider. *Id*. That same day, the CAO concurred with the recommendation. *Id*. The grievance was returned to Plaintiff, although a date of receipt is not listed.

On March 16, 2023, Plaintiff marked the grievance as an appeal to the ARB. (Doc. 89-1, p. 4). A stamp on the grievance notes it was received by the ARB on March 27, 2023. *Id*. On April 4, 2023, ARB member Debbie Knauer reviewed the grievance and returned the grievance as being received 30 days after the date of the CAO's decision. (Doc. 89-1, p. 2).

*Grievance E-23-6-36*

Lastly, Plaintiff filed emergency grievance # E-23-6-36 on June 6, 2023, complaining about medical treatment. Specifically, Plaintiff stated:

> I am continuously in a lot of pain, that goes from my top of my head (more towards the right side) – down along my spine to the very bottom of my lower back/spinal area. The pain along the lower part of my spine feels like hot sharp needles poking in my lower back. This also affects my knees – all the way to my feet which are then numb. My knees are also unstable. When I try to stand up (or do stand up) My knees buckle and I can barely stay standing. I sway back and forth trying, to keep my balance stable. And when I'm walking, I'm going side to side- being very, very unsteady! I feel dizzy all day long and when I'm sleeping & have to use the bathroom, I feel severe pain in my whole body. Especially in my lower back and my legs. Sometime I can barely put my fingers together to make a fist or even gripping things. I feel so weak with a lot of fatigue! What this grievance is about? With all of my pains and hurt I am not receiving any type of pain medication, therapy(ies) nor treatments. I have been diagnosed with neuropathy since 2021. This is ongoing issue because I am increased amount of pain and I am not receiving any help!

(Doc. 107-1, p. 33, 34). Plaintiff asked to receive pain medication, to receive other treatment or therapies, and to see an independent neurologist. The next day, the

CAO deemed the grievance emergent. *Id*.

On June 15, 2023, the grievance officer recommended that the grievance be partially upheld based on the response from Healthcare. Healthcare noted that Wexford provides scheduling with outside providers. It further noted that Plaintiff was waiting on scheduling, that Plaintiff had been seen on the medical provider line and nurse sick call, and that medication was ordered and provided. The CAO concurred with the grievance officer on June 15, 2023. Plaintiff appealed to the ARB, and the ARB received the grievance on June 26, 2023. (Doc. 107-1, p. 31). On July 5, 2023, ARB member Debbie Knauer returned the grievance to Plaintiff finding that the grievance failed to meet DR504.810, as Plaintiff did not provide the date he was seen by medical or requested treatment. *Id*. at p. 30.

## LEGAL STANDARDS

Summary judgment is proper when a moving party cannot establish the presence of a genuine dispute of material fact. *See* FED. R. CIV. PROC. 56(a). To survive a motion for summary judgement, the non-moving party must provide admissible evidence which would allow a reasonable jury to find in his or her favor. *See Maclin v. SBC Ameritech*, 520 F.3d 781, 786 (7th Cir. 2008). Generally, the Court's role is to determine whether a genuine issue of material fact exists, rather than evaluate the weight of the evidence, judge witness credibility, or determine the truth of the matter when determining the outcome for a motion for summary judgment. *See National Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008).

Whether a claim has been exhausted pursuant to Section 1997e(a) is generally a determination for a judge—not a jury—to make. *See Pavey v. Conley*, 544 F.3d 739, 741-742 (7th Cir. 2008), abrogated by *Perttu v. Richards*, 145 S.Ct. 1793 (2025) (holding that "parties have a right to a jury trial on PLRA exhaustion when that issue is intertwined with the merits of a claim that falls under the Seventh Amendment"). If a hearing is held due to an issue of fact about exhaustion of administrative remedies, the court hears evidence, finds facts, and determines credibility. *See Wilborn v. Ealey*, 881 F.3d 998, 1004 (7th Cir. 2018). The burden of proof is on the defendants to demonstrate that the prisoner failed to exhaust available administrative remedies. *See Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). Generally, a defendant will need to do more to carry the burden than plainly allege that no grievance exists. A defendant might meet said burden by submitting additional evidence such as grievance logs, counseling summaries, or evidence about the routine function of the grievance procedure. *See Daniels v. Prentice*, No. 17-2501, 741 Fed. Appx. 342, 343-344 (7th Cir. Nov. 6, 2018). No such intertwinement issues are implicated here, and there are no disputes of material fact. Thus, *Perttu* does not require the Court to hold a jury trial on the exhaustion issue.

Under the Prison Litigation Reform Act ("PLRA"), which governs lawsuits filed by inmates, "no action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). This coincides with the PLRA's statutory purpose of "afford[ing]

correction officials [the] time and opportunity to address complaints internally before allowing the initiation of a federal case." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *see also Begolli v. Home Depot U.S.A., Inc.*, 701 F.3d 1158, 1161 (7th Cir. 2012). It affords prison administrators an opportunity to fix the problem, reduce damages, and shed light on the factual disputes that may arise in litigation. *See Pozo v. McCaughtry*, 286 F.3d 1022, 1023-24 (7th Cir. 2002).

Inmates must follow their prison's administrative rules when attempting to exhaust their administrative remedies under the PLRA. *See Pozo*, 286 F.3d at 1023. Plaintiff is an inmate in the IDOC and is required to follow the regulations contained in the IDOC's Grievance Procedures to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, et seq. The Seventh Circuit requires strict adherence to a prison's grievance procedures to satisfy the requirements for exhaustion under the PLRA. *See Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). The exhaustion requirement cannot be satisfied if an inmate files untimely or procedurally defective grievances. *See Woodford*, 548 U.S. at 83. Additionally, an inmate must correctly complete all the steps outlined in the grievance procedures and is barred from filing suit prior to any step being completed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004); 42 U.S.C. § 1997e(a). If an inmate fails to complete all the steps correctly to exhaust his claim, then "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. However, inmates are not required to exhaust administrative remedies that are unavailable to them which can occur if, "prison employees do not respond to a properly filed grievance or otherwise use affirmative misconduct to prevent a prisoner from exhausting." *Dole*, 438

F.3d at 809.

The IDOC Grievance Procedures require that an inmate first file a grievance with

a counselor at their correctional institution within 60 days of the discovery of an incident.

*See* 20 ILL. ADMIN. CODE § 504.810(a). The Grievance must include, "factual details

regarding each aspect of the offender's complaint, including what happened, when,

where and the name of each person who is the subject of or who is otherwise involved in

the complaint." *See* 20 ILL. ADMIN. CODE § 504.810(c). If the inmate is unsatisfied with the

counselor's response, then the inmate can submit a formal grievance to the prison's

grievance officer. *Id* at (a)-(b). The grievance officer must then review the grievance and

provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). Within 60

days of the receipt of the grievance, the grievance officer must report their findings and

recommendations in writing to the CAO. *See* 20 ILL. ADMIN. CODE § 504.830(e). The CAO

will then review the findings and recommendations and offer a written decision to the

inmate. *Id*. The inmate can appeal the CAO's decision to the ARB within thirty days. *See*

20 ILL. ADMIN. CODE § 504.850(a). To do this correctly, the inmate is required to attach

copies of the grievance officer's report and the CAO's decision to his appeal. *Id*. The ARB

then submits its findings and recommendations to the Director who will issue the IDOC's

final decision within six months. *See* 20 ILL. ADMIN. CODE § 504.850(d)-(e).

A prisoner can amend the complaint to add a new claim or defendant, if he fully

exhausts his administrative remedies before seeking leave to amend. *See, e.g., Cannon v.*

*Washington*, 418 F.3d 714, 719-720 (7th Cir. 2005); *Barnes v. Briley*, 420 F.3d 673, 678 (7th Cir.

2005); *Getty v. Santos*, Case No. 3:18-CV-1134-MAB, 2020 WL 2832465, at *4-6 (S.D. Ill.

May 31, 2020). This exception does not allow a plaintiff to file an amended complaint to replead previously unexhausted claims and thereby circumvent the PLRA's exhaustion requirement. Rather, it allows a plaintiff to raise one or more new, properly exhausted claims against new defendants, if he has fully exhausted all available remedies before haling the new defendants into court. *See Barnes*, 420 F.3d at 678. In this respect, an amended complaint serves as the functional equivalent of a new complaint, marking the point in time when exhaustion as to those new claims and/or new defendants must be complete. *Id.* at 678 (citation omitted). Under this exception, Coronado's deadline for exhausting his administrative remedies as to all new claims and defendants was December 15, 2023, the date he submitted the First Amended Complaint.

DISCUSSION

Because there are no disputes of material facts, the Court finds it unnecessary to hold an evidentiary hearing.

Defendants asserts that the grievances filed before December 13, 2023, do not sufficiently implicate their actions/inactions in relation to Plaintiff's medical care and equal protection claims. Plaintiff counters that he did exhaust administrative remedies as he referred to medical issues generally, and as such the grievances put the IDOC on notice of the systematic medical problems overseen by the Defendants. While Plaintiff concedes that he did not file a grievance specifically alleging failure to provide translation services or healthcare materials in Spanish, Plaintiff argues that the grievances show that Plaintiff experienced communication issues. The Court rejects these arguments.

All of Plaintiff's grievances failed to identify Defendants Butalid, Bowman,

Wexford, and Hughes and failed to attribute any conduct towards these Defendants. The grievance form directs an inmate to include a description of what happened including "the name or identifying information for each person involved." *See* 20 ILL. ADMIN. CODE § 504.810(c). Although an inmate is not required to specifically name a potential defendant, he "must provide some identifying information about the accused individuals" and "enough information about who caused the grieved of problem so that a prison can properly investigate and resolve the [grievance]." *Jackson v. Esser*, 105 F.4th 948, 960 (7th Cir. 2024). Plaintiff's grievances are labeled as complaining of medical treatment and staff conduct; complaining about his medical treatment regarding his anemia and B-12 Deficiency at Centralia; complaining that nurses refused to give him his injections; complaining that Defendant Myers refused to treat his condition because he is Mexican; and complaining that Defendant Myers only saw him three times in the infirmary. He does not refer to Defendants Butalid, Bowman, or Hughes by name, nor does he refer to any actions attributed toward these doctors or the director. Likewise, there is no reference to Wexford or as to a policy/custom regarding Wexford in these grievances. There is simply nothing in any of Plaintiff's grievances that would give officials a fair opportunity to address any complaints about these Defendants. *See King v. Dart*, 63 F.4th 602, 608 (7th Cir. 2023). Thus, the grievances fail to exhaust the claims against these Defendants as to the Eighth Amendment deliberate indifference claim for failure to treat and for a widespread practice within the IDOC for inadequate healthcare.

Furthermore, Plaintiff's grievances do not serve to exhaust his equal protection claims against these Defendants. Plaintiff concedes that he did not specifically file a

grievance related to this claim. The Seventh Circuit has noted that an inmate is required to file a separate grievance "if the underlying facts or the complaints are different." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013). For instance, in *Bowers v. Dart*, 1 F.4th 513 (7th Cir. 2021), the Seventh Circuit found that a grievance complaining about an officer's failures to respond *during* an attack did not serve to exhaust a claim that officers failed to protect the plaintiff *before* the attack. The Seventh Circuit noted that claims in the grievance were "substantially distinct from the allegations in [the plaintiff's] federal complaint." *Id*. at p. 517. Additionally, the Seventh Circuit found that a grievance about the lack of water in an observation cell did not serve to exhaust claims about other issues with the same cell, including the presence of feces and chemical agents, because those claims were substantively distinct from the claims in the grievance. *See Jackson*, 105 F.4th at 959-961.

Here, Plaintiff claims in his grievances that he was denied medical treatment for anemia and B-12 Deficiency and that Defendant Myers refused to treat his condition because of his race. This is substantively different from his equal protection claim against Wexford, Hughes, and Bowman for discriminatory treatment for failing to provide health care information in Spanish. Only one of Plaintiff's grievances refers to race: grievance # E-21-7-82. In this grievance, Plaintiff states the specific date and time he saw the doctor, July 13, 2021, between 5:00 and 6:00 p.m., and states exactly what that doctor did to Plaintiff. However, this grievance does not allege that he was being discriminated because he was not provided medical care in Spanish. Thus, this grievance cannot serve to exhaust his Fourteenth Amendment Equal protection claim against Wexford, Hughes,

and Bowman for discriminatory treatment. The claims are factually different from those raised in any of his other grievances. *See, e.g.*, *Jackson*, 105 F.4th at 959 (noting that plaintiff failed to exhaust claims regarding the presence of chemical agents in his cell when the plaintiff's grievance only mentioned the use of chemical agents and failed to include the presence of chemicals in the cell as the "nature of the wrong."). Thus, Plaintiff has failed to exhaust his administrative remedies as to his Fourteenth Amendment Equal Protection claim against Wexford, Hughes, and Bowman.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the motions for summary judgment for failure to exhaust administrative remedies. (Doc. 89, 90). The Court **DISMISSES without prejudice** Plaintiff's Eighth Amendment claim, Count 1, against Alberto Butalid, Latoya Hughes (in her individual capacity), and Steven Bowman for failing to provide proper medical care and against Wexford for a claim of a widespread practice within the IDOC for providing inadequate healthcare. The Court also **DISMISSES without prejudice** Plaintiff's Fourteenth Amendment claim, Count 2, against Wexford, Latoya Hughes (in her individual capacity), and Steven Bowman for discriminatory treatment. The Court **DIRECTS** the Clerk of the Court to enter judgment at the close of the case. Remaining in this case are the two counts against Defendant Myers, Count 1 and Count 2, and against Defendant Hughes, in her official capacity, for any claims of equitable relief.

IT IS SO ORDERED.

DATED:  September 17, 2025.

Digitally signed by
Judge Sison
Date: 2025.09.17
13:43:26 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**