UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANDRES CORONADO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 3:22-cv-00741-GCS |
| | ) | |
| PERCY MYERS, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM & ORDER**

**SISON, Magistrate Judge:**

Pending before the Court is Plaintiff's motion for reconsideration. (Doc. 110). Specifically, Plaintiff moves the Court to reconsider the Memorandum & Order dated September 17, 2025, (Doc. 108), granting summary judgment as to Plaintiff's Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc.'s for failure to exhaust administrative remedies. Wexford Health Sources, Inc., ("Wexford") opposes the motion. (Doc. 11). Based on the reasons delineated below, the Court **DENIES** the motion.

Plaintiff, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Centralia Correctional Center ("Centralia"), brings this action pursuant to 42 U.S.C. § 1983 for alleged deliberate indifference to his medical needs and racial discrimination. (Doc. 1). In his original complaint, filed on April 15, 2022, Plaintiff alleges he went to the Health Care Unit ("HCU") at Centralia on July 13, 2021, to see Dr. Myers

Page **1** of **7**

because he was experiencing ongoing numbness in his head, arms, and legs. He was also feeling dizzy, lightheaded, and weak. He reported his symptoms to Dr. Myers and requested medication. Dr. Myers refused him medication and told him his symptoms would resolve over time. Plaintiff complained that Dr. Myers's response was the same for his previous visit on June 22, 2021. Plaintiff claims Dr. Myers then told him, "I do not like you Mexicans, that is why I don't want to medically treat you." (Doc. 1, p. 6).

Plaintiff, through appointed counsel, filed the amended complaint on December 15, 2023. (Doc. 49). In the Amended Complaint, Plaintiff alleges that after contracting COVID-19 while detained at Centralia in the Fall of 2020, he complained to Centralia's Health Care Unit ("HCU") about numbness in his feet, headaches, and dizziness. Despite Plaintiff's complaints about lightheadedness, dizziness, numbness, and weight loss between November 2020 and July 13, 2021, Dr. Myers prescribed medication, but he did not order further treatment, referral, or testing. On July 13, 2021, Plaintiff alleges Dr. Myers refused to treat him because he was Mexican. The next day, Plaintiff filed a grievance about Dr. Myers's treatment refusal. On July 17, 2021, Plaintiff was rushed to St. Mary's Hospital after suffering a seizure and becoming unconscious. The hospital found that Plaintiff had severe macrocytic anemia and "severe peripheral polyneuropathy due to B12 deficiency," meaning he would drag his toes when he walks. Over the following months, Plaintiff claims he was delayed in receiving B-12 injections. He continuously filed grievances through the HCU to receive treatment for his B-12 deficiency and anemia. Plaintiff claims he has not seen the doctor despite his frequent requests. His "slow walk" permit was also not renewed, which previously had permitted

him to walk at a slower place on account of his polyneuropathy and pain. In addition, Plaintiff reports continued numbness, headaches, dizziness, and difficulty sleeping.

Defendants moved to dismiss Plaintiff's amended complaint, and the Court granted in part and denied in part the motions. (Doc. 77). Specifically, the Court allowed Plaintiff to pursue an Eighth Amendment deliberate indifference claim, Count 1, for failure to treat against Defendants Myers, Butalid, Hughes, and Bowman and against Wexford for a widespread practice within the IDOC for inadequate healthcare. The Court also allowed Plaintiff to pursue a Fourteenth Amendment Equal Protection claim, Count 2, against Defendants Myers, Wexford, Hughes, and Bowman for discriminatory treatment.

On September 17, 2025, the Court granted summary judgment in favor of Wexford for failure to exhaust administrative remedies and dismissed without prejudice Plaintiff's Eighth Amendment claim, Count 1, against Wexford for a claim of a widespread practice within the IDOC for providing inadequate healthcare. The Court also dismissed without prejudice Plaintiff's Fourteenth Amendment claim, Count 2, against Wexford, Latoya Hughes (in her individual capacity), and Steven Bowman for discriminatory treatment. (Doc. 108).

The Court turns now to address the merits of the motion for reconsideration.

**DISCUSSION**

The Federal Rules of Civil Procedure do not explicitly contemplate motions to reconsider. Nevertheless, the Seventh Circuit has approved of district courts construing motions pursuant to the standards set forth in Federal Rule of Civil Procedure

59(e) or 60(b) if it appears that a party is requesting relief available under those Rules. *See United States v. Deutsch*, 981 F.2d 299, 300 (7th Cir. 1992). A motion under Rule 59(e) must be filed "no later than 28 days after the entry of judgment/order to be timely. This time limit is unyielding." *Banks v. Chicago Bd. of Educ.*, 750 F.3d 663, 666 (7th Cir. 2014) (citations omitted). The Court cannot extend the 28-day deadline imposed by Rule 59(e). *Id.* (citing FED. R. CIV. PROC. 6(b)(2); *Justice v. Town of Cicero, Ill.*, 682 F. 3d 662, 664-665 (7th Cir. 2012). When a motion to reconsider is filed more than 28 days after the entry of judgment/order, the Court is to treat the motion as filed under Rule 60(b). *Id.*

Here, the motion for reconsideration was filed on October 15, 2025, within the 28-day deadline. (Doc. 110). Thus, the Court will consider the motion under Rule 59(e).

Altering or amending through Rule 59(e) is an "extraordinary remed[y] reserved for the exceptional case." *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008). Rule 59 motions are for the limited purpose of correcting a "manifest error," and "[a] 'manifest error' is not demonstrated by the disappointment of the losing party"; rather, "[i]t is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (citation and internal quotations omitted). Rule 59(e) permits the Court to alter or amend judgments upon motion filed no later than 28 days after the date of entry.

A Rule 59(e) motion "is only proper when the movant presents newly discovered evidence . . . or if the movant points to evidence in the record that clearly establishes a manifest error of law or fact." *Burritt v. Ditlefsen*, 807 F.3d 239, 252-253 (7th Cir. 2015) (citations and internal quotations omitted). The motion is not an invitation to rehash

previously considered and rejected arguments. *See Bordelon v. Chicago School Reform Bd. of Trustees*, 233 F.3d 524, 529 (7th Cir. 2000).

As to the motion for reconsideration, the Court finds that there is no manifest error of law or fact under the standard set forth under Rule 59(e). Clearly, Plaintiff takes issue with the Court's decision to grant the motion for summary judgment in favor of Wexford regarding exhaustion of administrative remedies. Even so, Plaintiff primarily rehashes and reargues points raised in opposition to the motion for summary judgment. Specifically, Plaintiff in his opposition claims he grieved "issues with policies for which Wexford was responsible." (Doc. 96, p. 15).  Similarly, Plaintiff argues in the motion for reconsideration that "grievances about activities for which Wexford was responsible . . . put Wexford on notice of the claims against it." (Doc. 110, p. 5). Further, Plaintiff reargues that 20 ILL. ADMIN CODE § 504.810(c) is silent on filing grievances against corporate entities. However, the Court addressed these issues in its extensive and thorough Memorandum & Order granting Wexford's motion for summary judgment on the issue of exhaustion of administrative remedies. In fact, the Court found that none of Plaintiff's grievances alerted prison officials to any conduct attributable to Wexford. The cases cited by Plaintiff do hold that inmates need not name Wexford explicitly to exhaust administrative remedies. However, these cases do not eliminate the requirement that a grievance must identify the nature of the wrong and provide enough information to allow prison officials to address the issue.[1] Plaintiff's grievances did not attribute alleged

---

[1]     These cases are distinguishable from the case at bar in that these grievances pointed to a Wexford-controlled process, policy, or system-wide failure. For example, a

deficiencies, lack of outside treatment, lack of B-12 injections, lack of pain medication, and requests for "adequate professional healthcare" as to Wexford, nor did the grievances reference any policy or practice or systemic issue. These grievances were isolated, conduct specific events that did not describe a pattern, a process, or any Wexford controlled functions. The grievances complain about individual decisions by medical staff regarding his medical treatment, not by Wexford. Specifically, the grievances complain that nurses refused to give him his injections; complain that Defendant Myers refused to treat him because he is Mexican; complain that Defendant Myers only saw him three times in the infirmary. There is no reference to Wexford or as to a policy/custom regarding Wexford that would give officials a fair opportunity to address any of these complaints.

Moreover, the Court did not overlook significant facts that would have changed the outcome of the undersigned's decision. The Court remains convinced of the

---

22 day delay in x-ray scheduling, a process prison officials knew Wexford controlled, *Conley v. Birch*, No: 3:11-00013-MJR-SCW, 2012 WL 4202702, at *4 (S.D. Ill. Sept. 19, 2012); broad, unit wide failures in medical care, *Orozco v. Wexford Health Sources, Inc.*, Case No: 16-CV-995-SMY-RJD, 2018 WL 306923, at *4 (S.D. Ill. Jan. 5, 2018); years long delays tied directly to Wexford's utilization management and cost cutting policies; *Brown v. Ritz*, Case No: 3:22-CV-2372-MAB, 2024 WL 1155948, at *8 (S.D. Ill. Mar. 18, 2024); grievance expressly complained about delays in receiving outside specialist follow-up and Nurse Practitioner noted that they were "waiting for his follow-up outside the facility," directly pointing to Wexford's referral approval system, *Arce v. Wexford Health Servs.*, Case No. 3:18-cv-1348-SMY-GCS, 2019 WL 6702692, at *5 (S.D. Ill. Oct. 9, 2019); grievance challenged activities that Wexford was responsible and/or involved in the decision making process, *Loving v. Gomez*, Case No: 19-cv-00029, 2022 WL 3026932, at *4 (N.D. Ill. Aug. 1, 2022).

correctness of its decision. There has not been a wholesale disregard for, misapplication of, or failure to recognize controlling precedent.

Accordingly, the Court **DENIES** Plaintiff's motion for reconsideration. (Doc. 110).

**IT IS SO ORDERED.**

**DATED:  April 14, 2026.**

Digitally signed by Judge Sison
Date: 2026.04.14 15:12:07 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**